**[Cite as *State v. Shaw*, 2016-Ohio-7699.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-15-1165

      Appellee                                   Trial Court No. CR0201402968

v.

Cletissia Shaw                                     **DECISION AND JUDGMENT**

      Appellant                                   Decided:  November 10, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Rebecca A. Facey, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Following a jury trial, defendant-appellant, Cletissia Shaw, appeals the

May 18, 2015 judgment of the Lucas County Court of Common Pleas, convicting her of

obstructing justice.  For the reasons that follow, we affirm.

## A. Background

{¶ 2} On September 25, 2014, Dennis Davis was charged in a 24-count indictment with rape, unlawful sexual conduct with a minor, and the sexual battery of numerous children. A warrant was issued for his arrest. Because of the nature of his crimes, Davis' apprehension quickly became a priority of the Northwest Ohio Violent Fugitive Task Force. It gathered information to locate Davis and learned that he was engaged to Cletissia Shaw.

{¶ 3} Two deputy U.S. marshals went to Shaw's home to speak with her. They knocked on her door and after about five minutes, she answered. Shaw confirmed that Davis was her fiancé and that she was aware of the charges against him, but she claimed she had not seen or heard from him since learning that the indictment and arrest warrant had been issued. The deputy marshals asked if they could look around her house, and she consented. They did not find Davis. Before leaving, they warned Shaw that if she was being untruthful or did anything to inhibit their investigation, she would be charged with obstructing justice. She responded "well, you got to do what you got to do."

{¶ 4} On December 9, 2014, the full task force—consisting of deputy marshals, Lucas County deputy sheriffs, officers from the Department of Homeland Security, and Toledo police officers—went to Shaw's home. Again, they knocked, and again it took approximately five minutes for her to answer. She asked what they were doing there and insisted that Davis was not there. She consented to another search of her home.

2.

**{¶ 5}** With the full task team present, a more thorough search was conducted.  The task force team split up and searched the entire house.  Two members of the team searched a bedroom filled with trash bags, piles of clothing, and storage containers.  They came across a blue storage container with a box on top of it.  One of the task force members set aside the box and pried the lid off the container.  He found Davis inside, naked, holding a gun to his head.  The situation became chaotic, but Davis ultimately was apprehended.  Shaw was charged with obstructing justice, a violation of R.C. 2921.32(A)(1) and (C)(4).

**{¶ 6}** Following a jury trial, Shaw was convicted.  She was sentenced to three years' community control.  She appealed and assigns the following errors for our review:

> I.  Appellant received ineffective assistance of counsel in violation of her rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Constitution of the State of Ohio.

> II.  The jury's verdict was against the manifest weight of the evidence introduced by the state at trial.

### B.  Law and Analysis

**{¶ 7}** In her first assignment of error, Shaw argues that her trial counsel was ineffective because he failed to object to the state's opening statement and to various witnesses' testimony about the details of the charges against Davis.  In her second

3.

assignment of error, she contends that the jury's verdict was against the manifest weight of the evidence. We address Shaw's assignments of error out of order.

### 1. Manifest Weight of the Evidence

{¶ 8} In her second assignment of error, Shaw argues that there was no credible evidence that she assisted Davis in hiding in her home or that she obstructed his apprehension. She claims that the jury did not consider all of the evidence. In support of this argument, she points out that she consented to two separate searches of her home.

{¶ 9} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 10} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility

4.

determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 11} R.C. 2921.32(A)(1) provides that "No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime * * *, with purpose to hinder the discovery, apprehension, [or] prosecution, * * * shall * * * [h]arbor or conceal the other person * * *." R.C. 2921.32(C)(4) further provides that "if the crime committed by the person aided is aggravated murder, murder, or a felony of the first or second degree * * * and if the offender knows or has reason to believe that the crime committed by the person aided is one of those offenses * * *, obstructing justice is a felony of the third degree."

{¶ 12} Here, Davis was charged with rape, a first-degree felony, and Shaw was aware of this. She falsely denied that Davis was in her home, and Davis was found hiding in a storage container that had a lid that snapped shut. The lid did not have a mechanism to close it from the inside, and a box was stacked on top of it. Deportation Officer Michael Dietz described:

> And when I tried to pull it the bin was snapped on so you couldn't
> just pull it in the middle. * * * There was a small box also on top of the
> tote, so I had to knock the box off, but it was one of those totes where it
> kind of snaps on the ends, you know. And so I reached to the front with my

left hand, and as I was popping it up, pulling it back my way, Officer Korsog shouts out, he's got a gun.

{¶ 13} Sergeant Kevin Korsog, of the Toledo police department, confirmed this. He testified that Officer Dietz "actually had to shift and then actually pull up to unseal it. And, again, there was an item on top of it * * *." He confirmed, "there wasn't, like, a handle underneath the lid that he could have popped it himself."

{¶ 14} While Davis and Shaw both denied that Shaw helped to conceal Davis in the storage bin, Shaw confirmed that she and Davis were alone in the house. We find that the jury had before it strong evidence that Shaw falsely denied that Davis was with her and that Shaw helped Davis hide from law enforcement for the purpose of hindering his apprehension. We, therefore, conclude that the jury's verdict is supported by the evidence, and we find Shaw's second assignment of error not well-taken.

### 2. Ineffective Assistance of Counsel

{¶ 15} In her first assignment of error, Shaw argues that trial counsel was ineffective because he failed to object to the state's opening statement and to portions of the witnesses' testimony describing the nature of the offenses committed by Davis.

{¶ 16} In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. *State v. Shuttlesworth*, 104 Ohio App.3d 281, 287, 661 N.E.2d 817 (7th Dist.1995). To establish ineffective assistance of counsel, an appellant must show

6.

"(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002).

{¶ 17} Properly licensed Ohio lawyers are presumed competent. *State v. Banks*, 9th Dist. Lorain No. 01CA007958, 2002-Ohio-4858, ¶ 16. To establish ineffective assistance of counsel, the defendant must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *Strickland* at 688-692. As recognized in *Strickland*, there are "countless ways to provide effective assistance in any given case." *Id.* at 689. "Judicial scrutiny of counsel's performance must be highly deferential." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689.

{¶ 18} Shaw explains that the state, in its opening statement, told the jury that Davis had raped his biological daughter, the friends of his daughter, and the daughters of his ex-girlfriends. It also informed the jury that the victims were between five and 14 years old, and that Davis was indicted on 24 counts. Shaw points out that before the state began questioning its first witness, counsel approached the bench and argued that the details of the underlying charges against Davis were not relevant and were prejudicial.

7.

The trial court agreed with him, but declined to rule on the objection until it heard evidence. The state began its questioning and elicited from its witness, and from subsequent witnesses, that Davis had been indicted on 24 counts of sexually-related offenses. The indictment and judgment entry were admitted into evidence without objection by defense counsel. Shaw contends that the details of Davis' crimes were not relevant and were highly prejudicial. She insists that the trial court conveyed its willingness to sustain objections to such evidence, but counsel failed to object.

{¶ 19} "The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness." *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988).

{¶ 20} Here, while an objection may have been warranted during the state's opening statement, the jury was properly instructed that the opening statement is not evidence. With respect to the witnesses testifying as to the number of counts contained in the indictment and the failure to object to the admission into evidence of the indictment and judgment entry, we find that any purported error did not materially prejudice Shaw or affect the outcome of the trial given the strength of the state's case against Shaw. As we observed in the previous section, Davis was found in Shaw's home hiding in a storage container that could only be snapped shut from the outside and on which a box had been placed. We find that it is not reasonably probable that the jury would have reached a

8.

different result if counsel had succeeded in preventing all mention of the circumstances underlying the task force's search for Davis.

{¶ 21} We find Shaw's first assignment of error not well-taken.

## C. Conclusion

{¶ 22} We find Shaw's two assignments of error not well-taken and affirm the May 18, 2015 judgment of the Lucas County Court of Common Pleas.  Shaw is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Stephen A. Yarbrough, J.

James D. Jensen, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE