**[Cite as *State v. Brewton*, 2020-Ohio-1234.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No. L-19-1034

    Appellee                                        Trial Court No. CR0201703044

v.

Ben Brewton                                             **DECISION AND JUDGMENT**

    Appellant                                       Decided:  March 31, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**ZMUDA, P.J.**

{¶ 1} This matter is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, general division, sentencing appellant after an *Alford* plea to a term of life with parole eligibility after 20 years of imprisonment.  Finding no error, we affirm.

## I.  Facts and Procedural Background

{¶ 2} The events leading to this case occurred in July 2015, at a home on Gordon Street in Toledo, Ohio.  At that time, Brewton had moved in with his girlfriend, Vicky, who was herself staying with 61-year old Susan Furr, a co-worker and friend of Vicky.  When Brewton needed a place to stay while on electronic monitoring in an unrelated case, Furr agreed to let Brewton move in.  Brewton continued to live with Furr, even after Vicky moved out.

{¶ 3} The morning of July 23, 2015, Furr left work, arriving home around 10:00 a.m.  Friends and co-workers had no more contact with her after she left work, which was unusual and caused concern.  On this date, between 3:00 and 4:00 p.m., three ATM withdrawals were made from Furr's account, using her debit card.  Around 8:00 p.m., officers conducted a traffic stop of Furr's vehicle for a license plate violation.  Brewton was driving the vehicle, and police issued him a ticket, noting a large sum of cash on his lap, appearing to be around a thousand dollars.

{¶ 4} Furr did not report for her work shift the night of July 23, 2015.  In the evening of July 24, officers conducted a welfare check at Furr's residence, with authority to enter the home.  They found a dog closed in a bathroom, and at the bottom of the basement steps, they discovered Furr, deceased.  Furr's wrists and ankles were bound, and her body was covered in bedding.  The coroner later determined the cause of death as multiple blunt force trauma and strangulation, and ruled the death a homicide.

2.

{¶ 5} The investigation of this offense continued. In the meantime, Brewton was sentenced to prison on unrelated charges. This case went dormant, but eventually, the cold case unit took the case, and investigators interviewed Brewton at prison in September 2017. Brewton initially denied any involvement, but eventually claimed he witnessed Furr's death. After police confronted Brewton with physical evidence, he admitted to striking Furr in the head with a hammer because she had seen his face. Brewton then admitted to taking Furr's ATM card, forcing Furr to give him the PIN while beating her with the hammer. He admitted to using the card and PIN to withdraw funds from Furr's account. Police recovered Brewton's DNA from the hammer, retrieved from Furr's bedroom of the house.

{¶ 6} On November 27, 2017, Brewton was indicted on three counts: Count 1, aggravated murder in violation of R.C. 2903.02(B) and (F), an unclassified felony; Count 2, murder in violation of R.C. 2903.02(B) and 2929.02, an unclassified felony; and Count 3, aggravated robbery in violation of R.C. 2911.01(A)(3) and (C), a felony of the first degree.

{¶ 7} Brewton was conveyed from prison, and arraigned on January 23, 2018. The trial court appointed counsel, and Brewton entered not guilty pleas as to all counts. Prior to entering his plea, Brewton filed a motion for funds to retain an investigator, which was granted, and a motion to suppress. Following the state's response to his motion to suppress, the trial court granted Brewton's trial counsel leave to file a supplemental motion, providing more specificity regarding the suppression issues.

3.

{¶ 8} In his supplemental memorandum, Brewton raised issues regarding his competency to consent to interrogation, citing his tenth grade education and limited reading skills. He also argued that, at the time of the September 18, 2017 interview, he had begun serving a 24-month prison sentence in unrelated cases, and was not receiving proper medical or mental health care.[1]

{¶ 9} After several continuances of the suppression hearing, the trial court appointed new counsel for Brewton. At the scheduled suppression hearing, trial counsel withdrew the motion, and a trial date was set.

{¶ 10} On January 11, 2019, Brewton entered a plea of guilty pursuant to *North Carolina v. Alford* to Count 1, aggravated murder, with the state recommending a sentence of life with parole eligibility after 20 years and dismissal of the remaining charges. The trial court engaged in a Crim.R. 11 colloquy with Brewton. The trial court determined that Brewton was satisfied with his counsel's assistance and understood the potential sentence versus the sentence recommended by the state but not binding on the court. The trial court advised Brewton of his constitutional rights, and explained the effect of his plea. Brewton articulated his understanding of these rights and his understanding of the plea. The trial court accepted the plea, entered a finding of guilt as to Count 1, and continued the matter for sentencing.

---

[1] At the time of that interview, Brewton was recovering in prison from a gunshot wound to his chest, with the injury sustained prior to his incarceration.

4.

{¶ 11} On January 17, 2019, the trial court sentenced Brewton to a term of life imprisonment with parole eligibility after 20 years, and after making the required statutory findings, ordered the sentence to be served consecutively to the sentence Brewton was serving in a prior case. The trial court entered a nolle prosequi as to Counts 2 and 3, and waived all costs.

## II. Assignment of Error

{¶ 12} Brewton now appeals the trial court's judgment, asserting the following assignments of error.

1. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Ohio Constitution

2. The trial court erred to the prejudice of appellant in accepting a guilty plea, pursuant to *North Carolina v. Alford* which was not made knowingly, intelligently and voluntarily, in violation of appellant's Due Process rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 16 of the Ohio Constitution.

## III. Analysis

{¶ 13} In his first assignment of error, Brewton argues his trial counsel was ineffective in failing to seek a competency evaluation, based on his own assertions during the proceedings that he "needed help" and had a "messed up mindset."

{¶ 14} We review claims of ineffective assistance of counsel using a two-part analysis. First, we consider whether trial counsel's performance "fell below an objective standard of reasonableness." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland v. Washington*, 466 U.S. 668, 687-689, 104 S.Ct. 2052, 80 L.Ed.2d 675 (1984). Second, if we find deficient performance, we must then consider whether prejudice occurred as a consequence. *Bradley* at 142, citing *Strickland* at 691.

{¶ 15} In reviewing counsel's performance, our scrutiny "must be highly deferential[.]" *Bradley* at 142, quoting *Strickland* at 689. We presume a properly licensed attorney is competent. (Citation omitted.) *State v. Shaw*, 6th Dist. Lucas No. L-15-1165, 2016-Ohio-7699, ¶ 17. Furthermore, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Bradley* at 142, quoting *Strickland* at 689.

{¶ 16} Even if we find counsel's performance fell below the standard of reasonableness, we will not reverse unless we also find that this performance resulted in prejudice. *Bradley* at 142. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Bradley* at 142, quoting *Strickland* at 691. Therefore, to warrant reversal, Brewton must demonstrate that, but for his trial counsel's error, he would have realized a different result in the proceeding. *Bradley* at 142, citing *Strickland* at 691. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

6.

{¶ 17} In arguing his trial counsel was ineffective, Brewton suggests that the record demonstrated a competency issue. In support, Brewton relies on the reference to his mental state in seeking to suppress his statement, as well as the "horrific, brutal nature of the offense." Based on these circumstances, Brewton argues his counsel should have entered a plea of not guilty by reason of insanity (NGRI) on his behalf, and requested a mental health evaluation. The record, however, is devoid of *any* evidence warranting such action.

{¶ 18} "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves [by a preponderance of the evidence] that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14). In contrast, the standard for competency requires inquiry into a defendant's present mental condition to determine whether the defendant understands the nature of the proceedings and has the ability to assist trial counsel with the defense. *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, 940 N.E.2d 634, ¶ 69-70 (10th Dist.), citing R.C. 2945.37.

{¶ 19} Here, Brewton identifies no portion of the record that indicates he suffered from any type of mental illness at the time of the offense, or at any time in his life, as providing a basis for an insanity defense. In order to find trial counsel's performance deficient, there must be some indication that an NGRI plea would have "a reasonable probability of success" based on the facts and circumstances in the case. *State v. Anaya*,

7.

6th Dist. Lucas No. L-06-1375, 2008-Ohio-1853, ¶ 29, citing *State v. Brown*, 84 Ohio App.3d 414, 421, 616 N.E.2d 1179 (8th Dist.1992).

{¶ 20} With nothing in the record to indicate mental illness, Brewton's trial counsel was not deficient in failing to assert the defense of NGRI. *Anaya* at ¶ 29, citing *State v. Twyman*, 2d Dist. Montgomery No. 19086, 2002-Ohio-3558, ¶ 73. Trial counsel may not be deemed ineffective for failing to attempt a "futile act." *State v. Leu*, 6th Dist. Lucas No. L-17-1265, 2019-Ohio-3404, ¶ 47, citing *State v. Conkright*, 6th Dist. Lucas No. L-06-1107, 2007-Ohio-5315, ¶ 50 (no ineffective assistance because failing to file a meritless motion would be a "futile act"). Accordingly, we find Brewton's first assignment of error not well-taken.

{¶ 21} In his second assignment of error, Brewton argues his plea was not knowing, intelligent, and voluntary. Brewton acknowledges the governing rule, Crim.R. 11(C), and concedes that the trial court properly followed the rule in fully explaining the charges and penalties, conveyed all pertinent information, and inquired regarding Brewton's understanding. During a plea hearing, a trial court may not accept a guilty plea "without first addressing the defendant personally and doing all of the following" as provided by Crim.R. 11(C)(2):

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for

8.

probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 22} Ordinarily, we review a challenge regarding the voluntariness of a plea for strict compliance with Crim.R. 11(C)(2). *See, e.g., State v. Hayward*, 6th Dist. Wood No. WD-17-010, 2017-Ohio-8611, ¶ 6 (strict compliance with Crim.R. 11(C)(2) is required). Here, Brewton acknowledges the trial court complied with Crim.R. 11(C)(2). He also concedes his own failure to seek to withdraw his plea. Even so, Brewton contends his plea was not voluntary because he indicated a wish for trial, expressed a sense of hopelessness in the face of a lengthy prison term, and felt compelled to enter his plea as a result of this hopelessness rather than any outside influence or coercive force.

{¶ 23} To be clear, Brewton does not proclaim his innocence, or dispute any of the evidence the state was prepared to introduce against him in a trial. The lengthy prison

9.

sentence, moreover, was the shortest possible sentence for the offense for which he entered a plea. Brewton presents no legal authority to support his argument that hopeless feelings regarding a lengthy prison term will render a plea involuntary.

{¶ 24} Additionally, Brewton does not argue the trial court failed to explain any of his constitutional rights. Pursuant to Crim.R. 11(C)(2), a trial court need only ensure a defendant "subjectively understands the implications of his plea and the rights he is waiving." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). The fact that Brewton experienced feelings of hopelessness may be viewed as an indication that the trial court effectively conveyed complete information to Brewton.

{¶ 25} We find no provision, within Crim.R. 11(C)(2) or elsewhere in the law, requiring a defendant to enter into a plea free of hopeless feelings in order for that plea to be considered knowing, intelligent, and voluntary. Because there is no challenge to the trial court's compliance with Crim.R. 11(C)(2), and Brewton identifies no authority to support his theory of involuntariness due to hopelessness, we find no error regarding his plea. Brewton's second assignment of error, therefore, is not well-taken.

## IV. Conclusion.

{¶ 26} Finding substantial justice has been done, we hereby affirm the judgment of the Lucas County Common Pleas Court, general division. Appellant is assessed the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.